**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **DANIKA YAMPIERRE** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 1:21-cv-01209-ELH |
| **BALTIMORE POLICE DEPARTMENT** | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

Defendant Baltimore Police Department ("BPD" or "Defendant"), by undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b), hereby submits this Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, and for reasons states as follows:

<u>**INTRODUCTION**</u>

When boiled down, Plaintiff Danika Yampierre's suit essentially asks this Court to referee a workplace feud between her and a subordinate. Rather than accept that she was properly held accountable for failing to manage a difficult co-worker, Plaintiff instead blames her supervisor for not doing the job for her. But Plaintiff's inability to accept this harsh – but fair – reality is the driving force behind her Complaint. In addition, the allegations in her Complaint far exceed the scope of her EEOC Charge of Discrimination. In fact, that charge involves entirely separate claims and completely different people. Thus, Plaintiff's Complaint is untimely and improper, and it warrants dismissal.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint against BPD in the United States District Court for the District of Maryland on May 17, 2021.  ECF No. 1.  Her claims are entirely predicated upon the EEOC Charge of Discrimination (Charge No.: 531-2020-02077) that she filed on May 11, 2020.  *See* EEOC Charge of Discrimination No. 531-2020-02077, attached hereto and incorporated herein as **Exhibit 1**.  Plaintiff failed to provide the Charge number in her Complaint, and provided a filing date for her Charge that differs from what appears on the Charge itself.  *See Id*. at ¶ 8.  Indeed, Plaintiff failed to attach both the Charge of Discrimination and Notice of Right to Sue to her Complaint.  *Id*.  Nevertheless, upon information and belief, the only Charge of Discrimination that Plaintiff filed is Charge No. 531-2020-02077.  **Exh. 1**.

The Complaint alleges the following: violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") – Race Discrimination (Count I); Title VII – Sex Discrimination (Gender) (Count II); Title VII – Sexual Harassment (Hostile Work Environment) (Count III); Title VII – Retaliation (Count IV); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count V); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.* (Count VI); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. (Count VII); the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T §§ 20–101 *et seq*., (Count VIII); and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §§ 2000e(k) *et seq*. (Count IX). ECF No. 1. Plaintiff states she received a Right to Sue Letter on March 8, 2021, and that she then timely filed this action.  ECF No. 1, ¶ 8.  She seeks compensatory damages, attorneys' fees, costs, and injunctive relief.  ECF No. 1.  Since each count fails to state a claim upon which relief can be granted, Plaintiff's Complaint must be dismissed with prejudice and without leave to amend.

## STATEMENT OF FACTS [1]

Plaintiff claims that she was discriminated against based on her race, gender, and disability (Counts I, II, VII, IX), that she suffered sexual harassment through a hostile work environment (Count III), and that she was retaliated against for engaging in protected activity (Count IV). ECF No. 1. She was first employed with BPD in August 2006, and she currently holds the rank of Detective Sergeant. *Id.* at ¶ 22. Since 2013, Plaintiff was assigned to the Headquarters/City Hall Security Unit. *Id.* at ¶ 23. Around March of 2019, a new Lieutenant, Deanna Effland, was assigned to that Unit. *Id.* at ¶ 24. Plaintiff was subordinate to Lt. Effland. In speaking to Lt. Effland about the Unit, Plaintiff explained that a subordinate officer, Abdulsalam Ajikobi, was "difficult [ ] to command[,] and that many of the Unit's issues stemmed from his insubordination and noncompliance." *Id.* at ¶ 25. Although Plaintiff was Ofc. Ajikobi's direct supervisor, she had difficulty managing him and was unable to correct his behavior. *Id.* at ¶¶ 25-27. Consequently, Plaintiff looked to Lt. Effland to do this job for her. *Id.* at ¶¶ 27-29. But that did not happen.

In mid-June 2019, Plaintiff was relieved of her scheduling duties due to of issues between Lt. Effland and Plaintiff relating to overtime and the regular work hours of the officers in the Unit. *Id.* at ¶¶ 30-40. Meanwhile, Plaintiff was still having trouble managing Officer Ajikobi and continued to request assistance. *Id.* at ¶ 41. Around October 2019, Lieutenant Brian Pearson began sexually harassing Plaintiff, asking whether she wanted to "go out with him after work." *Id.* at ¶ 51. In November 2019, Ofc. Ajikobi was charged with insubordination. *Id.* at ¶ 52. During this time, the issues between Plaintiff and Officer Ajikobi, persisted, and Ofc. Ajikobi was now

---

[1]   Defendants recite the facts based on the allegations as pleaded in the Complaint. This recitation is not a concession or admission of any of the facts contained therein.

claiming that Plaintiff was unprofessional and harassing him.  *Id.* at ¶¶ 54-57.  This upset Plaintiff. *Id.* at  ¶ 57.

In December 2019, Plaintiff was administratively charged with inappropriate workplace environment and disrespectful conduct and towards Lt. Pearson.  *Id.* at ¶ 64.  The head of the Unit, Director Randolph Reynolds, reassigned Plaintiff's authority over the Unit.  *Id.* at ¶ 67. Plaintiff filed her EEOC complaint against the BPD In January 2020.  *Id.* at ¶ 70.  On or about February 14, 2020, she went out on maternity leave.  *Id.* at ¶ 72.  During that time, Plaintiff was contacted by the BPD's Internal Affairs Division ("IAD"), which investigates complaints of officer misconduct.  *Id.* at ¶ 73.  IAD contacted Plaintiff several times to investigate the numerous administrative charges against her.  *Id.* at ¶¶ 73-75; 78.  In June 2020, with Plaintiff still on maternity leave and without any update on her return to work, the investigating IAD Detective explained to Plaintiff that she was "facing pressure to investigate the three internal complaints that had been lodged against the Plaintiff."  *Id.* at ¶ 80.  In July 2020, after Plaintiff had returned to work, she reported to IAD to receive the formal paperwork to the numerous administrative disciplinary charges against her.  *Id.* at ¶¶ 84-85.  Those charges were investigated and ultimately not sustained.  *Id.* at ¶ 91.

Plaintiff was also criminally investigated by the Baltimore City State's Attorney's Office ("SAO") for her conduct.  *Id.* at ¶ 95.  Indeed, in January 2021, half the detectives in her Unit received Grand Jury summons to testify in a criminal case against Plaintiff. *Id.* at ¶¶ 97-98.  Then, on January 28, 2021, Plaintiff was reassigned to the Eastern District to work in a patrol capacity. *Id.* at ¶ 100.  She was subsequently ordered to attend a meeting at the SAO regarding the criminal charges against her.  *Id.* at ¶ 102.  When Plaintiff arrived with her criminal attorney, she was informed that she was being investigated for "soliciting information about the grand jury

proceedings." *Id.* Despite that she has been the subject of criminal investigations from the SAO and has had numerous internal disciplinary charges brought against her, Plaintiff believes that these actions were borne out of a discriminatory and retaliatory animus. *Id.* at ¶¶ 104-107.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *See, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although courts must generally accept the allegations of a complaint as true, that principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotations omitted).

In addition, a plaintiff fails to state a claim where the allegations on the face of the complaint show an affirmative defense would bar recovery. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (citing Fed. R. Civ. P. 8(c)). In evaluating the complaint, unsupported legal allegations

need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In general, if materials "outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. Pro. 12(b). "Rule 12(b) [, however,] does not impose on the district court 'an obligation to notify parties of the obvious.'" *Carter v. Baltimore Cty., Maryland*, 39 F. App'x 930, 933 (4th Cir. 2002). While this Court should focus its inquiry on the sufficiency of the facts set forth in the Complaint, "consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citations omitted).

## ARGUMENT

It is not uncommon for workplace relationships to sour and inter-employee conflicts to develop. It is far less common, however, for such quarrels to lead to administrative and criminal investigations and charges. Such is the case here.

Since she cannot sue the SAO for criminally investigating her, Plaintiff seeks to hold BPD liable for the consequences of her own workplace misconduct. Plaintiff admits that she has had issues with numerous co-workers, mismanaged subordinates, and that she was the subject of countless disciplinary and criminal investigations. Indeed, it is her own improper behavior – and

nothing more – that is underlying cause of her workplace frustrations.  Moreover, while Plaintiff maintains she is a victim, her own Complaint concedes that her conduct led to both internal charges and an external criminal investigation for tampering with Grand Jury testimony.  Having faced no adverse employment action, and without anything to support her claims against BPD, Plaintiff desperately tries to divert attention from herself.  BPD is not liable for Plaintiff's failings as an employee, and her Complaint must be dismissed as a matter of law.

I.       **Plaintiff failed to exhaust her administrative remedies, because the claims in her Complaint exceed the scope of her EEOC Charge.**

Many of Plaintiff's claims are premature, because she failed to exhaust her administrative remedies.  Notably, Counts I – IV (race discrimination, gender discrimination, sexual harassment/hostile work environment, and retaliation, all brought under Title VII) and Counts VII – VIII (disability discrimination under the ADA and violation of Maryland Fair Employment Practices Act ("MFEPA")), each contains claims that go well beyond the scope of her Discrimination Charge with the EEOC.

As this Court is well aware, prior to asserting a Title VII claim in federal court, Plaintiff must first exhaust her administrative remedies by filing an administrative charge with the EEOC or an appropriate state or local agency.  42 U.S.C. § 2000e–5(b–d); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  Administrative exhaustion is also required under the ADA and MFPEA.  *Sillah v. Burwell*, 244 F. Supp. 3d 499, 506 (D. Md. 2017); MD. CODE ANN., STATE GOV'T § 20-1013(a)(1).  The Plaintiff's EEOC Charge "defines the scope of her subsequent right to institute a civil suit." *Naves v. Maryland*, No. TJS-18-3974, 2021 WL 765686, at *3 (D. Md. Feb. 26, 2021), quoting *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  The allegations in the Charge of Discrimination "generally operate to limit the scope of any subsequent judicial complaint.  Only those discrimination claims stated in the initial charge, those

reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citation omitted). Courts "are not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("[A] plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference *different time frames, actors, and discriminatory conduct* than the central factual allegations in his formal suit." (emphasis added)). Plaintiff's factual allegations must correspond on both the basis for discrimination and the type of discrimination in her Charge. *Chacko*, 429 F.3d at 509.

In this case, Plaintiff's Charge of Discrimination stands in stark contrast to her Complaint. For example, Plaintiff's Charge of Discrimination states she was subjected to harassment and only names Lt. Effland and Lt. Pearson as the alleged perpetrators. *See* **Exh. 1**. In contrast, the Complaint alleges different actors, different time frames, and different purported conduct. In her federal Complaint, Plaintiff names Ofc. Ajikobi, Major Stephanie Lansey, Director Reynolds, Lieutenant Gene Ryan, and countless other Detectives at IAD as purported bad actors. *See generally* ECF No. 1. Specifically, Plaintiff spends considerably time in her Complaint airing numerous grievances against Ofc. Ajikobi, who she accuses of being a main perpetrator against her. *Id.* Ofc. Ajikobi's name is entirely omitted from her Charge of Discrimination, despite the fact that Plaintiff heavily cites his behavior in the Complaint as the foundation for her suit. *Id.*

The alleged acts listed in the Charge are miniscule. There, Plaintiff claimed that: 1) Lt. Effland harassed Plaintiff by demanding she tell her what she testified to at IAD regarding Lt. Effland's possible overtime violations, 2) Lt. Pearson harassed Plaintiff by asking her when she

planned to go on a "light duty" work assignment due to her pregnancy, 3) Lt. Pearson made false allegations that resulted in Plaintiff being investigated internally by Internal Affairs, 4) Plaintiff was excluded from meetings and had several of her job duties removed, and 5) Plaintiff was accused of arriving to work late and leaving early. *See* **Exh. 1**. In contrast, Plaintiff adds countless new claims in the Complaint that were never raised in her Charge. Her Complaint details harassment by subordinates, sexual harassment, collusion by IAD Detectives, and a criminal investigation into Plaintiff's behavior. ECF No. 1. Most significantly, many of these alleged instances occurred *before* Plaintiff filed her EEOC Charge on May 11, 2020. ECF No. 1, at ¶¶ 22-78. Plaintiff's omission of these claims is telling, and she cannot now add them to this suit. *See Naves*, 2021 WL 765686, at *3 ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit.'" (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)).

Moreover, Plaintiff has taken allegations in the Charge and morphed them into completely different claims in her Complaint. For instance, in her EEOC Charge, Plaintiff completely fails to mention any sexual harassment or a hostile work environment. *See* **Exh. 1**. With respect to Lt. Pearson and harassment, Plaintiff only states that "beginning on September 3, 2019[,] and continuing to present, [she has] been subjected to pregnancy-related harassment in the form of Lt. Pearson repeatedly asking when [she] was going on light duty in the form of false accusations against me." *Id.* Whereas the Complaint states:

> 51.   On or about mid-October 2019, Lt. Pearson began sexually harassing the Plaintiff and Sgt. Leslie Williams. Lt. Pearson would often ask the Plaintiff and Sgt. Williams to go out with him after work because he was lonely after his most recent relationship ended. Despite the fact that the Plaintiff and Sgt. Williams rejected his advances each time, Lt. Pearson continued to make these requests with increasing

pressure. Lt. Pearson made the Plaintiff and Sgt. Williams extremely uncomfortable every time he interacted with them. . . .

58.     On or around November 22, 2019, Plaintiff drafted an administrative report (Form 95) addressed to Director Reynolds that outlined the hostile work environment that Lt. Pearson had created. Plaintiff also detailed the numerous sexual harassment that she has experienced from Lt. Pearson and the need for an immediate resolution.

*See* ECF No. 1.

Notwithstanding that these two paragraphs are Plaintiffs only allegations of "sexual harassment" in her entire 44-page Complaint, more fundamentally, they  entirely absent from Plaintiff's EEOC Charge.  Clearly, this disconnect shows that Plaintiff has failed to exhaust her administrative remedies.  Instead, Plaintiff is attempting to shoehorn new issues and allegations through her Complaint before this Court.  Thus, her claims should be barred.  *See Naves*, 2021 WL 765686, at *3 (D. Md. Feb. 26, 2021) (when an EEOC charge "alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex," the claim will generally be barred for the plaintiff's failure to exhaust administrative remedies. (internal citations omitted)).

Plaintiff's threadbare Charge of Discrimination omits the lion's share of the claims in this lawsuit.  For example, her EEOC Charge never listed "Disability" as a basis of her alleged discrimination.  **Exh. 1**.  Yet, Count VII of Plaintiff's Complaint is labeled "Disability Discrimination in violation of the Americans with Disabilities Act ("ADA").  ECF No. 1, at ¶¶ 204-214.  Further, nothing in Plaintiff's Charge of Discrimination ever signaled that she would later assert an ADA claim in her lawsuit.  Likewise, Plaintiff's Charge is bereft of any detail that would prompt  an investigation into claims of ADA discrimination.  As with the other claims in her lawsuit, Plaintiff's ADA Count far exceeds the scope of her Charge.  *See Jones v. Wormuth*, No. CV ADC-21-860, 2021 WL 4290486, at *5 (D. Md. Sept. 21, 2021) (noting that "the Fourth

Circuit has consistently opined that a plaintiff's claim exceeds the scope of the EEOC charge where the EEOC charge alleges one basis of discrimination and the litigant seeks to introduce another basis of discrimination." (internal citations omitted)).

Plaintiff's Complaint paints a completely different cause of action, one that far exceeds the scope of her May 11, 2020 Charge of Discrimination.  Therefore, Plaintiff has failed to exhaust her administrative remedies with the EEOC. *See Chacko*, 429 F.3d at 507–08, 512 (employee failed to exhaust administrative remedies where his charge alleged specific acts of harassment involving supervisors, but at trial, the employee's case centered on coworker harassment spanning a period of twenty years and introduced different evidence of national origin epithets); *see also Thompson v. Golden M Co.*, No. CIV. WDQ-14-3254, 2015 WL 3888753, at *5 (D. Md. June 22, 2015) ("Thompson's claims-continuous denial of breaks to express milk and discriminatory application of tardiness rules and termination—are considerably different from the one instance of discrimination alleged in her Charge—Wintermoyer's March 21, 2012 denial of a scheduling change. Nor would a reasonable investigation of that incident necessarily uncover Thompson's additional claims.").

That Plaintiff filed her Charge in May 2020, and failed to include countless allegations and causes of action that were known to her at the time, is telling.  *See Brooks v. United Parcel Service, Inc.*, No. CV DKC 20-2617, 2021 WL 4339194, at *9 (D. Md. Sept. 23, 2021) (a Title VII suit "may not present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC charge.").  Simply put: Plaintiff failed to exhaust her administrative remedies. Her claims are barred. The Complaint must be dismissed, with prejudice and without leave to amend.

## II.      Plaintiff's Title VII claims are time-barred.

A Charge of Discrimination must be filed with the EEOC or an appropriate state or local agency within 180 days of when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, like Maryland. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4, n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F, App'x 256 (4th Cir. 2008); *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 661 (D. Md. 2011).

The 300-day time limitation is "to be strictly enforced." *See Tangires v. John Hopkins Hosp.*, 79 F. Supp.2d 587, 596 (D. Md. 2000) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)); *Mezu v. Morgan State Univ.*, 264 F.Supp.2d 292, 294 (D. Md. 2003) ("If a charging party fails to comply with this filing requirement, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit."); *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp.2d 587, 592 (D. Md. 2000) ("If a charging party fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not subsequently be challenged in a Title VII suit.").

As argued above, Plaintiff's Complaint raises new factual incidents occurring from May 2020 to March 29, 2021. ECF No. 1, ¶¶ 22 – 103. In order to timely preserve these claims, Plaintiff needed file a Charge of Discrimination within 300 days after the alleged discriminatory acts occurred. Plaintiff failed to file a Charge of Discrimination about any of these incidents. Consequently, the majority of her Title VII claims are not properly before this Court. Even if Plaintiff were to now file a charge, the majority of those claims would of course be time-barred. *Smith v. McCarthy*, No. CV ELH-20-419, 2021 WL 4034193, at *16 n.9 (D. Md. Sept. 3, 2021)

("Timeliness provisions in Title VII . . . and other federal anti-discrimination statutes are treated as statutes of limitations."); *Chacko*, 429 F.3d at 508–13 ("an individual cannot bring suit until he has exhausted the administrative process. . . . We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit.") (collecting cases).

To this end, Plaintiff cannot benefit from the continuing violation doctrine, because it is inapplicable here since the claimed acts are not part of the same unlawful practice or repeated conduct mentioned in the Charge itself. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115–19 (2002). Rather, the Complaint presents discrete acts of alleged discrimination, which necessarily require that Plaintiff exhaust her administrative remedies. *Brooks*, 2021 WL 4339194, at *6 (explaining that the Supreme Court's decision in *Morgan*, "rejected the 'continuing violation' doctrine's application to claims for discrete acts of discrimination and retaliation that occurred before the Title VII limitations period.").

Here, Plaintiff has not presented an ongoing hostile work environment. Instead, she lists a series of largely disconnected and unrelated incidents involving by different actors and at different times. This is insufficient to benefit from the continuing violation doctrine. *See Udeh v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. CV RDB-20-3745, 2021 WL 3142026, at *5 (D. Md. July 26, 2021) ("[U]nder the continuing violation doctrine, allegations comprising a hostile work environment charge can include events outside of the 300-day statutory period when such events are 'part of the same actionable hostile work environment practice' and 'at least one act falls within the [statutory] time period' since a hostile work environment claim normally 'occurs over a series of days or perhaps years.'"). Plaintiff's Complaint is replete with untimely and improper claims, As such, her Complaint must thus be dismissed, with prejudice and without leave to amend.

### III.    Plaintiff has not shown discrimination based on race, gender, or pregnancy.

Even if Plaintiff's Complaint were proper, she has not sufficiently alleged facts that demonstrate discrimination based on race Plaintiff's race, gender, or pregnancy.  Nor has Plaintiff alleged sufficient facts to support her claim that she suffered retaliation for engaging in protected activities.  Accordingly, Counts I, II, IV, V, VII, and VIII fail and must be dismissed.

Plaintiffs may prove Title VII discrimination or retaliation claims "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973). *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), *abrogated on other grounds, Laird v. Fairfax Cty., Virginia*, 978 F.3d 887, 893 n.6 (4th Cir. 2020).  To establish a *prima facie* claim of discrimination under *McDonnell Douglas*, a plaintiff "must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[2]  *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 778 (D. Md. 2020) (quoting *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015), *abrogated on other grounds, Bing v. Brivo Sys., LLC*, 959 F.3d 605, 615 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021)) (internal quotation marks omitted).  Once a plaintiff establishes a *prima facie* case,

> [the] burden then shifts to the [defendant] to show that its alleged retaliatory action was in fact the result of a legitimate non-retaliatory reason.  If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination.

---

[2]  "Section 1981 and MFEPA claims of discrimination are analyzed under the same framework as Title VII." *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 n.20 (D. Md. 2013).  *See also Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 209 (2016) (MFEPA).  Claims under the PDA are examined in the same fashion as other discrimination claims under Title VII.  *See Young*, 135 S. Ct. at 1345.

*Foster*, 787 F.3d at 250 (internal quotations and citations omitted).

Here, Plaintiff offers on conclusory statements and conjecture.  Her Complaint posits that, because an action was taken, it was therefore due to and determined by her race, sex, or pregnancy, or done in retaliation. ECF No. 1.  But Plaintiff's mere guesswork is not enough to satisfy the pleading standard. *See Bing*, 959 F.3d at 618 ("Being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination. . . . The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias.").  In this case, Plaintiff fails to proffer any factual detail at all to support these claims and she further fails to identify the races and genders of several of the individuals who she alleges discriminated against her. ECF No. 1.

In reality, Plaintiff blindly concludes that any conduct of co-workers, subordinates, and superiors with which she disagrees must be discriminatory.  This kind of *non sequitur* and rank speculation is palpably insufficient to survive dismissal.  Indeed, Plaintiff has not sufficiently alleged any facially plausible claims rooted in "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  This Court cannot draw inferences of discriminatory motive in the absence of conclusive fact.  *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 583–86 (4th Cir. 2015) (finding race and gender discrimination claim to be insufficient, speculative, and conclusory when no factual basis was provided to explain what transpired during that job interviews where white male or female applicants were selected over African-American females applicants).  Rather than offer facts that support her claims, Plaintiff instead supplies ample evidence that undermines her claims, i.e., that her own conduct prompted her internal and criminal investigations.

Similarly, Plaintiff fails to establish that she suffered any adverse employment action.  An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Evans v. Maryland Nat'l Capital Parks & Planning Comm'n*, 2020 WL 6703718, at *8 (D. Md. Nov. 13, 2020) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'").  Plaintiff must show that a "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).  Material adversity "is important to separate significant from trivial harms. Title VII . . . does not set forth a general civility code for the American workplace."  *Id.* (quotations omitted).

Here, Plaintiff has suffered no actual adverse employment action.  Her Complaint makes clear that she was never demoted, she did not lose benefits, she suffered no loss in pay or rank, and she was never terminated.    To the contrary, Plaintiff only offers very kinds of workplace gripes that courts routinely dismiss.  Indeed, Plaintiff claims she received inadequate support in dealing with an insubordinate and difficult employee, that she was improperly investigated for workplace misconduct,  that she faced "trumped up" administrative charges, and that she had several of her administrative duties reassigned.  ECF No. 1.  Even if true, these allegations do not constitute "adverse employment actions."  *See Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 584–585 (D. Md. 2002).  As detailed in the Complaint, at no point did Plaintiff suffer any

loss of income, rank, or benefits during her employment with BPD.  She was never suspended without pay, terminated, or otherwise punished.  *See Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) ("employment discrimination laws require as an absolute precondition to suit that  some adverse employment action have  occurred.").    Although Plaintiff believes that  her transfer from the Building Security Unit to the Eastern District constitutes an adverse employment action, caselaw does not support this position.  *See Gordon v. Gutierrez*, 2007 WL 30324, at *7 (E.D. Va. Jan. 4, 2007) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)) ("reassignment to a less appealing job is not  an adverse employment action unless it has a 'significant detrimental effect,' such as a 'decrease in compensation, job title, level of responsibility, or opportunity for promotion.'").    Other than this transfer, Plaintiff has not offered any other tangible employment action.  *See Settle v. Baltimore County*, 34 F.Supp.2d 969, 989 (D. Md.  1999)  ("[a]lthough  actions  short  of  termination  may  constitute an adverse employment action within the meaning of [Title VII,] ... not everything that makes an employee unhappy is an actionable adverse action.").

Additionally, as much as Plaintiff wants them to be, internal administrative charges and investigations are not *per se* adverse employment actions.  In this case, Plaintiff has not properly pleaded facts to support that these investigations arose from a discriminatory motive based on race, sex, pregnancy, or out of retaliatory animus.  *See Settle v. Baltimore Cty.*, 34 F. Supp. 2d 969, 992 (D. Md. 1999) ("[P]laintiffs have to show not only that the disciplinary proceedings sprang from a discriminatory or retaliatory motive, but that the nature and character of the investigation, which did not lead to the imposition of discipline, actually adversely affected some term or condition of employment, *i.e.*, inflicted an 'employment injury.' Specifically, if a disciplinary investigation is reasonably rooted in articulable facts justifying such an investigation, neither inconvenience nor

emotional anxiety on the employee's part will constitute an 'employment injury' sufficient to render the investigation itself an adverse employment action independently cognizable under Title VII.").

At bottom, although Plaintiff takes exception to her various workplace situations, none of actions she alleges that BPD took constitutes adverse employment actions.  *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (stating that Title VII was not intended "to provide redress for trivial discomforts endemic to employment.").  Therefore, Plaintiff cannot establish her *prima facie* case and her Complaint must be dismissed.

### IV.   Plaintiff has not pleaded a hostile work environment claim.

Other than in the actual Count itself, the word "hostile" is largely absent from the factual allegations in Plaintiff's Complaint.  ECF No. 1, at ¶¶ 152-160.  Plaintiff uses the word "hostile" as an adjective to describe an unpleasant work situation, which was largely by her own making, *i.e.*, her inability to supervise of her employees and her workplace misconduct.  Rather, Plaintiff fails to plead sufficient facts to plausibly allege a claim for hostile work environment. As such, her Complaint must be dismissed.

 A hostile environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).   To  establish  a hostile work environment claim  based  on sexual harassment,  "'a plaintiff-employee must prove that (1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.'" *Johnson v. Azar*, No. 8:19-CV-01859-PWG, 2020 WL 6544831, at *4

(D. Md. Nov. 6, 2020), (quoting *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013)); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021). Sufficiently pervasive or severe conduct "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

As noted above, Plaintiff's Charge of Discrimination is utterly devoid of any references or examples of sexual harassment that would constitute a hostile work environment. **Exh. 1**. Furthermore, her Complaint also lacks any detail on this claim. There are only two references to "sexual harassment" in her Complaint. In Paragraph 51, Plaintiff states that,

> on or about mid-October 2019, Lt. Pearson began sexually harassing the Plaintiff and Sergeant. Leslie Williams. Lt. Pearson would often ask the Plaintiff and Sgt. Williams to go out with him after work because he was lonely after his most recent relationship ended. Despite the fact that the Plaintiff and Sgt. Williams rejected his advances each time, Lt. Pearson continued to make these requests with increasing pressure. Lt. Pearson made the Plaintiff and Sgt. Williams extremely uncomfortable every time he interacted with them.

ECF No. 1, ¶ 51. Likewise, Paragraph 58, states,

> on or around November 22, 2019, Plaintiff drafted an administrative report (Form 95) addressed to Director Reynolds that outlined the hostile work environment that Lt. Pearson had created. Plaintiff also detailed the numerous sexual harassment that she has experienced from Lt. Pearson and the need for an immediate resolution.

*Id.* at ¶ 58.

Even if true, these allegations do not constitute a hostile work environment, as they are neither severe nor pervasive. The "severe or pervasive" requirement is both subjectively and objectively evaluated. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The standard for determining whether the environment is objectively hostile or abusive is "from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (*en banc*) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 81 (1998)).  That said, the objective determination also requires the court to "'look[] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir. 2019) (quoting *Harris*, 510 U.S. at 23); *see also High v. Comm'r, Soc. Sec.*, No. CV SAG-18-3334, 2019 WL 5209613, at *9 (D. Md. Oct. 16, 2019) ("[A] hostile work environment cannot be shown by establishing 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [a plaintiff's] supervisor.'") (internal citations omitted).  Nothing in the Complaint satisfies these requirements, and Plaintiff has not alleged sufficient facts to show that she suffered any sexual harassment.  *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (nothing that while positioning a magnifying glass over a plaintiff's crotch and giving him a congratulatory kiss at his wedding receiving line was "tasteless and inappropriately forward," it was not sufficiently severe or pervasive enough to constitute actionable conduct). Even if she had, this claim would still be barred as she failed to properly exhaust her administrative remedies.

Thus, Plaintiff's hostile work environment claim fails, and her Complaint must be dismissed with prejudice.

### V.    Plaintiff fails to state a violation of the ADA.

Assuming, *arguendo*, that Plaintiff can overcome the fact that she is barred from bringing her ADA claims, she still has not alleged sufficient facts to properly state such a claim.

The ADA prohibits discrimination against an individual with a disability.  42 U.S.C. § 12112(a).  One form of discrimination under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability

who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship[.]" 42 U.S.C. § 12112(b)(5)(A).

A *prima facie* case of failure to accommodate establishes: "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that the[employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

Although Plaintiff asserts under Count VII that "the Defendant was aware of her medical complications and her disability status and did not provide reasonable accommodations during her after her pregnancy," her Complaint is entirely wanting of any factual allegation that would raise this allegation above the level of conclusory. ECF No. 1, ¶ 210.  Moreover, the word "disabled" is completely omitted from the Complaint, and "disability" appears in only Plaintiff's recitation of the ADA Count itself.  ECF No. 1.  Plaintiff never identifies her disability or even claims that she was, in fact, disabled. She is also silent as to her accommodation request, and utterly fails to mentions whether she even requested a reasonable accommodation from BPD.  Indeed, Plaintiff completely fails to note whether she spoke with somebody at BPD about her disability or that she was ever actually denied an accommodation.  In reality, Plaintiff ostensibly seeks to  tack this claim on to the back end of her Complaint as a whim.  As evidenced by the fact that "Disability" is not even checked on her Charge. This claim cannot proceed and Count VII must be dismissed.

## VI.   Plaintiff's Claim under Section 1981 is improper.

In Count V, Plaintiff alleges violations of Section 1981(a) of Title 42 of the United States Code.  ECF No. 1, ¶¶ 2, 185-195.  This claim is improper.  Plaintiff does not raise the issue under Section 1983 of Title 42 of the United States Code.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

701, 733 (1989); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'") (internal citations omitted).

Even assuming that Plaintiff properly pleaded this claim, it would still fail, as the Supreme Court has expressly rejected "*respondeat superior* as a basis for holding a state actor liable under § 1983 for violation of the rights enumerated in § 1981. . . ." *Jett*, 491 U.S. at 736, 738.  Plaintiff has also failed to allege any facts that entitle her to relief under this claim.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–92 (1978).  As such, Count V must be dismissed with prejudice and without leave to amend.

**VII.    Plaintiff has no cause of action under HIPPA.**

Plaintiff's HIPPA claim fairs no better.  Not only has Plaintiff failed to allege in the factual section of the Complaint that she did, in fact, contract COVID-19, she completely misunderstands the applicability of HIPAA to the Defendant.  HIPPA permits the Secretary of Health and Human Services to adopt regulations governing the exchange of health information.  42 U.S.C. § 1320d-2.  The Privacy Rules of HIPPA are promulgated under Title 45 of the Code of Federal Regulations Sections 160 and 164.  HIPPA's Privacy Rules apply by definition to *covered entities* and *business associates*.  45 C.F.R. § 160.102(a–b); *see also* 45 C.F.R. § 164.104(a–b); 45 C.F.R. § 164.500(a–c).  BPD does not fall within the definition of a covered entity or business associate.  *See United States v. Elliott*, 676 F. Supp. 2d 431, 440 (D. Md. 2009) ("law enforcement agencies, including the office of the prosecuting attorney, are not covered entities under HIPPA.").

Notwithstanding the fact that BPD is not a covered entity or business associate, dismissal is also procedurally appropriate because HIPPA does not create a private cause of action.  *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (noting that "every circuit court to consider

whether HIPAA created a private *right* to sue has found that it does not.").  HIPPA is inapplicable to this matter, and this Cause of Action should be dismissed, with prejudice and without leave to amend.

### VIII.   BPD has sovereign immunity against any MFEPA claim brought in Federal Court.

Plaintiff has also claimed that Defendant has violated the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T §§ 20–101 *et seq*. (Count VI).  ECF No. 1, ¶¶ 215-219.  There are no original or independent facts in the Complaint that support this claim. Instead, Plaintiff recycles the same allegations used to buttress her Title VII causes of action.

Defendant BPD is considered an arm of the State for the purpose of State law claims, and thus enjoys sovereign immunity.  *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997) (Sovereign immunity extends to "state agents and state instrumentalities."); *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 303, 323 (2001); *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) ("The claims against the Baltimore Police Department based on state law will, therefore, be dismissed on sovereign immunity grounds.").

As section 20-903 of the State Government Article provides, "the State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." MD. CODE ANN., STATE GOV'T § 20-903.  However, Section 20-1013(b) of the State Government Article restricts proper venue to "the circuit court for the county where the alleged unlawful employment practice occurred."  MD. CODE ANN., STATE GOV'T § 20-1013(b).  In *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019), the Court of Appeals for the Fourth Circuit held that "because the consent to suit provision does not specify the State's intention to subject itself to suit in *federal court*, that provision cannot be read to waive the State's Eleventh Amendment immunity.  Moreover, neither

the venue provision nor any other statute expressly indicates that the State's consent to suit extends to suit in federal court." (internal citations, quotations, and alterations omitted).  Thus, BPD enjoys immunity from Plaintiff's MFEPA claim.[3]  As with all of her other claims, this Count must also be dismissed, with prejudice and without leave to amend.

## CONCLUSION

Plaintiff has boldly brought inapplicable, time-barred, and improper claims against BPD before this Court.  The kitchen-sink allegations in the Complaint are shockingly scant on factual detail that could support her claims of discrimination.  In reality, Plaintiff both proffers, then discounts, that she was subject to a criminal investigation by the SAO for her workplace misconduct.  She lobs an innumerable amount of conclusory accusations, all the while offering no support for those claims.  Plaintiff cannot be allowed to advance a de facto *res ipsa* approach to support Title VII claims and discrimination claims. The law requires more, and even under a relaxed pleadings standard, Plaintiff's claims fall short.  The Complaint is barred as a matter of law and otherwise fails to state a claim upon which relief can be granted.  As such, the Complaint must dismissed, with prejudice and without leave to amend.

WHEREFORE, Defendant respectfully request that this Honorable Court dismiss Plaintiff's entire Complaint, with prejudice and without leave to amend.

---

[3] Alternatively, Plaintiff did not comply with the notice requirements of the Local Government Tort Claims Act, and does not include any indication to the contrary in her Complaint. *See Martino v. Bell*, 40 F. Supp. 2d 719, 723–24 (D. Md. 1999) (noting that "the LGTCA applied to 'all torts without distinction, including intentional and constitutional torts.'") (quoting *Thomas v. City of Annapolis*, 113 Md. App. 440 (1997).  Thus, because the LGTCA applies to Plaintiff's allegations that her state rights were violated, she is procedurally barred by her non-compliance with the notice requirements of the LGTCA.

Respectfully submitted,

_____/s/_____

Justin S. Conroy
Deputy Chief Legal Counsel
Federal Bar No. 28480
(410) 396-2496 / (410) 396-2126 fax
Baltimore City Department of Law
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of October, 2021 a copy of the foregoing Motion to Dismiss and Memorandum in Support were electronically filed in accordance with the Electronic Filing Requirements and Procedures as established by the U.S. District Court for the District of Maryland.

_____/s/_____

Justin S. Conroy

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………1

PROCEDURAL HISTORY…………………………………………………………..2

STATEMENT OF FACTS……………………………………………………………3

STANDARD OF REVIEW…………………………………………………………...5

ARGUMENT………………………………………………………………………….6

    I.       Plaintiff failed to exhaust her administrative remedies, because the claims in her Complaint exceed the scope of her EEOC Charge…...……………………7

    II.      Plaintiff's Title VII claims are time-barred…………………………………11

    III.    Plaintiff has not shown discrimination based on race, gender, or pregnancy……12

    IV.    Plaintiff has not pleaded a hostile work environment claim………………………18

    V.      Plaintiff fails to state a violation of the ADA……………………………...20

    VI.    Plaintiff's Claim under Section 1981 is improper…………………………21

    VII.   Plaintiff has no cause of action under HIPPA……………………………22

    VIII.  BPD has sovereign immunity against any MFEPA claim brought in Federal Court…………………………………………………………………...23

CONCLUSION………………………………………………………………………24