## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| **DANIKA YAMPIERRE** | * |
| | * |
| *Plaintiff,* | * |
| | * |
| | *  **Case No.:** 1:21-CV-01209-ELH |
| | * |
| **v.** | * |
| | * |
| | * |
| **BALTIMORE POLICE DEPARTMENT** | * |
| | * |
| *Defendant.* | * |
| | * |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiff, Danika Yampierre, hereby opposes the Defendant's Motion to Dismiss. Contrary to its argument, Defendant has not established sufficient grounds for dismissal of Plaintiff's complaint on the basis of a lack of jurisdiction and/or a failure to state a claim. In support of its Motion, Defendant has argued that: Plaintiff's claims are partially time-barred; that Plaintiff's claims exceed the scope of her EEOC charge, she failed to exhaust her administrative remedies, and thus lacks jurisdiction to bring her Title VII claims; that Plaintiff did not provide facts to support her allegation that the Defendant treated her disparately and subjected her to discrimination and harassment based upon race, sex, disability, and pregnancy; that Plaintiff failed to provide factual allegations to support a finding of a hostile work environment; that Plaintiff failed to identify any facts to support her allegation that the Defendant knew she had engaged in protected activity or retaliated against her for her protected activity; that Plaintiff failed to identify any facts to support her allegation that the Defendant violated the American with Disabilities Act and Pregnancy Discrimination Act; that Defendant has sovereign immunity against Plaintiff's

allegations that the Defendant violated the Maryland Fair Employment Practices Act; that Plaintiff failed to identify any facts to support her allegation that the Defendant violated The Health Insurance Portability and Accountability Act; and that Plaintiff's Section 1981 claim is improper.

Not only does the Plaintiff's Complaint contain sufficient factual matter that state claims to relief that are plausible on its face on every single Count alleged in her 44-page Complaint, but the Defendant's Motion to Dismiss merely demonstrates disputed facts and potential defenses which need to proceed through discovery, and ultimately should only be heard and considered by a jury. Accordingly, the Defendant's Motion to Dismiss should be denied and the Plaintiff's case should proceed.

## LEGAL STANDARD

The objective of a motion to dismiss is to, "'test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In order to survive a motion to dismiss, the complaint must, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). While the complaint must contain sufficient factual matter, it does not need to provide detailed factual allegations, but it must "provide the grounds of [the plaintiff's] entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and, "construe them in the light most favorable to the Plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If, after viewing the complaint in this light, the court infers that there has been more than a mere possibility

of misconduct, then the motion should be denied and the case proceeds. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1950, 173 L. Ed. 2d 868 (2009).

## ARGUMENT

**1.   Plaintiff's New Claims Do Not Exceed the Scope of Her Charge.**

Contrary to Defendant's claims, Sgt. Yampierre's new claims do not exceed the scope of her EEOC Charge. It is well settled, and Defendant does not deny, that claims "reasonably related" to claims in the preceding EEOC charge may be maintained in a subsequent lawsuit.  Def. Memo. for MTD. p. 8. (citing *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  Defendant claims that Plaintiff's Complaint is filled with "miniscule" acts and "completely different claims."  Def. Memo. for MTD. p. 8-9.  Defendant's argument makes it clear that it seeks to trivialize Plaintiff's traumatic workplace experiences and is asking this Court to acquiesce in the Defendant's efforts to downplay the *various* instances of discrimination and retaliation as alleged in Plaintiff's workplace—which is why there are so many, "different [but related] claims." Despite Defendant's colorful but cursory arguments, Plaintiff's complaint must be looked at in totality and holistically, and when doing so, a clear picture of a pattern and practice of discrimination and retaliation that Plaintiff has and continues to persist through as an African American woman Sergeant, emerges.  All of the allegations that Plaintiff averred in her Complaint are reasonably related to her EEOC Charge and when the dots are connected, much to Defendant's dismay, they illustrate a police department that is full of pervasive and consistent discriminatory and retaliatory treatment of Sgt. Yampierre as a Black woman in leadership. A law enforcement agency that seemingly fails to, and rejects the idea of, protecting one of its own.

As stated above and in Plaintiff's complaint, Plaintiff endured incident after incident of such conduct that, when taken together, form a continuous pattern of discrimination and retaliation

that began again when Plaintiff reported Lt. Effland's conduct back in August 2019.  Plaintiff's allegations of discrimination and retaliation, as well as acts and comments about her race and sex are "reasonably related" to Plaintiff's preceding EEOC charge because the actions of Officer Ajikobi, Major Stephanie Lansey, Director Reynolds, Lieutenant Brian Pearson, and others are instances of retaliation and harassment that Plaintiff faced, which were included in the preceding EEOC charge.  As a result of Officer Ajikobi's hostility and insubordination towards her as a Black woman Sergeant, Plaintiff first contacted Lt. Effland in order to effectively and appropriately handle Officer Ajikobi's aggression towards her and other members of her Unit.  Pla. Compl. at 5, ¶ 25, 28, and 30-32.  When Lt. Effland failed to perform her duties and aid Plaintiff in handling Officer Ajikobi's actions in order to restore a non-toxic work environment, Plaintiff began to be targeted by Lt. Effland.  *Id.*  This behavior increased when Plaintiff reported Lt. Effland to Internal Affairs for abuse and mishandling of overtime.  Pla. Compl. at 7-8, ¶ 32, 35, and 36.  Unfortunately, Plaintiff standing up for herself was the precipitous to a series of actions through which Lt. Effland and the other above-named officers worked in tandem to retaliate against her, including, but not limited to, refusing Plaintiff reasonable medical accommodations associated with her pregnancy; allowing Plaintiff to persist through an environment of unabated sexual harassment; scrutinizing her time and attendance, including while she was out on maternity leave; mispresenting her ability to take and qualify for Family Medical Leave, even though she had a qualifying medical condition; sending police officers to spy on her whereabouts under the guise of never before used "wellness checks," and removing her duties—amongst other actions.  Defendant's attempt to characterize the officers' actions as separate incidents with no common thread falls flat because *but for* Plaintiff's reported issues with Officer Ajikobi and Lt. Effland, her prior engagement in statutorily-protected activity, her asserting her rights to use protected leave, and her request for a medical

4

accommodation, she spoke up against what she felt was differential and harassing treatment and inadvertently had a target placed on her back.

In Defendant's Motion it states that, "Plaintiff's Complaint paint a completely different cause of action." Def. Memo. For MTD. p. 11.  However, the allegations in Plaintiff's complaint correspond and are inextricably linked to Plaintiff's EEOC charge when viewed in totality because the events and actions named in the EEOC charge precipitated the allegations in Plaintiff's Complaint.  As such, Plaintiff's Complaint does not exceed the scope of her EEOC charge and her allegations should not be dismissed. Nevertheless, whether Defendant disputes the merits of Plaintiff's claims is separate and apart from the fact that Plaintiff, in her Complaint, has alleged plausible claims upon which relief can be granted—and those allegations are directly connected to her EEOC Charge. On a dispositive motion pursuant to a 12(b)(1) or a 12(b)(6) analysis, the Court's consideration is whether the pleading standard has been met, and we contend that in Sgt. Yampierre's very detailed complaint, it has.

**2.   Plaintiff's Claims Should Not Be Dismissed Because They Are Not Time-Barred And She Contacted The EEOC To File Her Complaint Within 300 Days Of The Unlawful Employment Practice**

Under Title VII, a Maryland employee must file a charge of discrimination within 300 days after the last "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  As such, Defendant claims that Plaintiff's EEOC charge is partly time-barred because Plaintiff failed to file an EEOC charge on the "new factual incidents," thus has failed to exhaust her administrative remedies, and is past the statute of limitations.  Def. Memo. for MTD p. 12.  However, Defendant's argument hinges on its preceding argument that Plaintiff's Complaint is full of "new" allegations and erroneously concludes that they are not subject to the continuing violation doctrine because "[Plaintiff] lists a series of largely disconnected and unrelated incidents involving by [sic] different

actors and at different times." Def. Memo. for MTD p. 13. As discussed above, all of Plaintiff's allegations are related to her filed EEOC charge precisely because the acts Plaintiff alleges are a part of a pattern of harassment and retaliation that resulted in a hostile work environment as a result of the discrimination that she alleged in her EEOC charge. As such, Plaintiff's claims are not time-barred and are in fact subject to the continuing violation doctrine. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Therefore, Plaintiff's claims should not be dismissed under Title VII.

**3.  Plaintiff's Title VII Claims Should Not Be Dismissed Because She Has Averred Sufficient Factual Allegations Upon Which Relief Can Be Granted For Claims Of Discrimination Based On Race, Sex, And Pregnancy Discrimination.**

Contrary to the Defendant's contention, Plaintiff has also pled sufficient factual allegations to state a plausible claim for relief under *Twombly* and *Iqbal* pursuant to Title VII and Section 1981. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570). To satisfy the universally accepted pleading standard under *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. (*citing Twombly*, 550 U.S. at 556).

Here, Plaintiff provided sufficient factual allegations in her Complaint to support a plausible claim for relief for race, sex, and pregnancy discrimination under Title VII. In terms of Title VII, Plaintiff has provided sufficient factual allegations in her Complaint to show that 1.) her job performance was satisfactory, 2.) an adverse employment action occurred, and 3.)  that similarly situated employees who were outside of her protected class were treated more fairly.

First, pursuant to Title VII, to show that Plaintiff's job performance was at least satisfactory, Plaintiff has pled in the Complaint that she has been employed by the Defendant since August 15, 2006 and was never advised of any problems with her work performance. This factual contention creates the reasonable inference that Plaintiff's work performance was at least satisfactory (since she would have heard negative feedback during the fifteen years she has been a police officer, and also in leadership as a Police Sergeant). Further support of the contention that Plaintiff's work performance was at least satisfactory, is the fact that Plaintiff is a Detective Sergeant in the police force which required her to meet minimum requirements for the position and pass a test to even obtain this higher-ranked position. Accordingly, in light of the factual contentions mentioned above, Plaintiff has pled sufficient factual information in his Complaint to show that her job performance was satisfactory, meeting the *Twombly* and *Iqbal* plausibility standard.

Second, Plaintiff has provided sufficient factual contentions to show that an adverse employment action has occurred. Specifically, Lt. Deanna Effland began to retaliate and discriminate against Plaintiff after Plaintiff reported Officer Akijobi's behavior and Plaintiff discovered Lt. Effland's misuse of overtime. Pla. Compl. at 5-7, ¶ 25, 26, 27, 28, 30, 31, 32, and 33. Further, Lt. Effland and Officer Akijobi began to coordinate with other members of BPD to harass Plaintiff by filing multiple false EEOC allegations against her in an effort to discredit Plaintiff's own EEO charges. *Id*. at 12-13, ¶ 42-46. Additionally, when Plaintiff was finally able to receive aid against Officer Akijob's actions by having him transferred out of the office, the transfer came at a cost. *Id.* at 13-14, ¶ 49-55. Lt. Pearson only supported Officer Akijobi's transfer as long as Plaintiff subjected herself to his sexual harassment of her. When Plaintiff reported Lt. Pearson's repeated requests that he go out with her because he was "lonely," Lt. Pearson retaliated

by cancelling Officer Akijobi's transfer thus once against subjecting Plaintiff to a hostile work environment. *Id*. at 14, ¶ 54. Defendant and the leadership within, were essentially forcing Plaintiff to trade one form of harassment for another, and when she would not submit quietly, they would force her to endure *both*.

To further retaliate against Plaintiff, the entire time that she was being subjected to harassment by Lt. Effland, Officer Akijobi, and Lt. Pearson, Plaintiff's maternity related reasonable medical accommodations were being held hostage.  Plaintiff was denied reasonable accommodations and was told that if she was to be placed on light duty, she would be transferred out of her unit. *Id*. at 15-16, ¶ 58-59.   In an effort to not be transferred out of her unit, Plaintiff forced herself to work her full duty despite the pain and strain it placed on her body due to her pregnancy and her disability that resulted from her pregnancy. *Id.*  As Plaintiff continued to face harassment, she felt forced to file an EEOC complaint against Defendant on January 9, 2020. *Id*. at 18, ¶ 70.  At this point, the harassment grew and Plaintiff faced pressure to return to work as soon as possible despite her disability and maternity leave—the parking space that had been hers for eight years was revoked without reason or replacement, causing her to walk further while dealing with associated medical issues related to her pregnancy; she was informed she was being investigated by Internal Affairs, while out on maternity leave; the schedule she had had for eight years straight was unexpectedly altered without reason *and* despite pushback from other members of the unit that she supervised; she was threatened about her refusal to sign a verbal letter; and as a means to further intimidate her, Internal Affairs forwarded Plaintiff's 2019 Complaint to the State Attorney's Office for criminal charges in retaliation for her refusal to sign the verbal letter, which was petty and should have had no relationship to the purview of matters that the State's Attorney investigates.  Pla. Compl. at 19-23, ¶ 83, 84, and 90-95.  The resulting investigation

culminated in grand jury testimony by three officers in her unit, all of which had been reprimanded by her as their supervisor, while the remaining five officers in her unit who had not been reprimanded were not called to testify. *Id.* at 24, ¶ 97-98. In light of the factual allegations mentioned above, Plaintiff has pled sufficient factual allegations, and has accordingly stated a plausible claim for relief.

Lastly, Plaintiff has provided sufficient factual allegations to establish that similarly situated employees who were outside of her protected class were treated more fairly. As a pregnant African American female, Plaintiff is a member of a protected class. Upon information and belief, the two main aggressors, Lt. Pearson Effland, and Officer Akijobi, used their position and internal connections to harass the Plaintiff, a pregnant African American female, who spoke out about the harassment (sexual and non-sexual) and discrimination that she was enduring at their hands. Defendant's leadership and fellow civic duty-bound officers orchestrated numerous acts to progressively break Plaintiff down, and to subject her to humiliating and debasing discrimination as a result of her race, sex, and gender. Defendant was fully aware of these actions and did nothing to stop the harassment or abate what Plaintiff had widely complained about as an intolerable working environment. Accordingly, in light of the factual allegations mentioned above, Plaintiff has stated sufficient factual allegations meeting the plausibility standard under *Twombly* and *Iqbal*.

**4. Plaintiff's Title VII Claims Should Not Be Dismissed Because She Has Averred Sufficient Factual Allegations Upon Which Relief Can Be Granted For A Retaliatory Hostile Work Environment Due to Defendant's Unwelcome Conduct.**

Contrary to Defendant's argument, Plaintiff has also averred sufficient factual allegations in her Complaint to state a plausible claim for retaliation under Title VII. As discussed in the preceding section, Plaintiff has sufficiently alleged facts to show that 1.) her job performance was satisfactory, 2.) an adverse employment action occurred, 3.) that similarly situated employees who

were outside of her protected class were treated more fairly, and 4.) that there is a connection between her adverse action and her protected activity.   The allegations stated in the preceding sections all lend themselves to having created a hostile work environment that the Plaintiff was unable to escape as a result of her engagement in well-documented, statutorily-protected activity. At every turn, it became clear that no matter how much Plaintiff cried for help, she was met with inaction and indifference by Defendant, which enabled a hostile work environment to flourish— and it is continuing to this day. Unquestionably, this harassment and hostility was tantamount to meeting the threshold of "severe and pervasive."  All the incidents that Plaintiff endured form a clear picture of a hostile work environment that the Defendant did nothing to abate or prevent, which only increased after Plaintiff reported the discrimination and sexual harassment she was subjected to.  As such, in light of the factual allegations mentioned throughout the preceding sections, Plaintiff has stated sufficient factual allegations meeting the plausibility standard under *Twombly* and *Iqbal*.

**5.  Plaintiff's Allegation in Count VIII Should Not Be Dismissed Because She Has Averred Sufficient Factual Allegations Upon Which Relief Can Be Granted For Defendant's Violation of the American With Disabilities Act (ADA/ADAA).**

Contrary to Defendant's argument, Plaintiff has also averred sufficient factual allegations in her Complaint to state a plausible claim for relief for disability discrimination under the ADA. In terms of the ADA, Plaintiff has provided sufficient factual allegations in her Complaint to show that 1.) she was an individual who had a disability within the meaning of the statute; 2.) that Defendant had notice of her disability; 3.) that with reasonable accommodation she could perform the essential functions of her position; and 4.) that Defendant refused to make such accommodations.  *See Swann v. US Foods, Inc.*, 2015 U.S. Dist. LEXIS 78665 *8 (citing *Pollard*

10

*v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002) *and Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001)).

Defendant does not deny that it is able to make reasonable accommodations for an employee with a disability or one regarded as having a disability, if needed.   Def. Mot. Memo at 21.  In fact, Defendant's argument relies solely on the assertion that it was unaware that Plaintiff needed accommodations and that Plaintiff did not provide enough facts to support that she did.  *Id*. However, Plaintiff's Complaint makes it clear that she consistently informed Defendant, through her supervisor, of her pregnancy and the associated complications and that, Defendant's officers in fact responded to Plaintiff, which demonstrates that Defendant was aware of her medical needs. Additionally, it is well settled under the ADA/ADAA, that the onus and burden is on the employer, not the employee, to engage in the interactive process and to make a full assessment about whether an employee, like Ms. Yampierre, in fact needs a reasonable accommodation, to what extent, and whether the sought or proposed accommodation would create an undue burden on it, as the employer. The Defendant did none of the sort. Instead, in its Motion, it tries to skirt around well-documented federal law, and basically argue, "it's the Plaintiff's fault." Nevertheless, the argument is not only untrue, it is documented that Plaintiff notified her command of her high-risk pregnancy and complications on or about August 27, 2019.  Pla. Compl. at 7, ¶ 34.  She again notified them on or about September 25, 2019, highlighting the importance of her attending all her doctors' appointments due to her pregnancy-related disability, and she also requested to have her leave audited before she left for maternity leave in order to account for the time that she needed to be out of work for time to manage her medical condition before delivery and after—all of which her supervisor, Lt. Pearson, acknowledged.  *Id.* at 13, ¶ 46.  Also contrary to Defendant's attempt at plausible deniability, is the fact that on or about November 25, 2019, Lt. Pearson informed Plaintiff

that *if* she were to go on light duty, she would be transferred out of the unit—which is clearly a threat, an act of unlawful interference for Sgt. Yampierre to exercise her rights, and clear retaliation against her. *Id*. at 15-16, ¶ 59.

And, also contrary to Defendant's argument is the fact that on or around December 2, 2019, Plaintiff received an email from Human Resources stating that they had been informed that she was pregnant and that she needed to submit relevant documentation immediately. *Id*. at 17, ¶ 63. Defendant was aware of the medical complications Plaintiff faced because it was widely known that the stress of the work environment caused her to delivery her child prematurely, on the middle of a sidewalk before she could even make it to a hospital. As if that were not traumatic enough, the entire time that Plaintiff was on maternity leave, different members of BPD would call or text Ms. Yampierre and try to pressure her to return to work against her doctor's order, despite being informed of the several surgeries she had to undergo as a result of the complications she experienced from her pregnancy and her delivery. *Id*. at 19-20, ¶ 74-80.

Upon Plaintiff's return to work, on or around August 2020, Plaintiff once again informed members of BPD that she still had severe medical complications she was dealing with, and Lt. Ryan specifically indicated to her that he would update Director Reynolds. *Id*. at 21, ¶ 86. Nevertheless, on or around September 2020, Lt. Ryan advised Defendant *against* transferring Plaintiff to a medical locator due to her inability to return to full duty, despite the known condition she was in. *Id*. at 22, ¶ 89. All of the above actions show that Defendant was well aware that Plaintiff was dealing with a pregnancy-related disability, that Plaintiff needed reasonable accommodations to perform the essential functions of her position, and that Plaintiff repeatedly asked for aid. Defendant's argument that it could not give reasonable accommodations to Plaintiff because it was unaware that they were needed, is plainly and simply, false.

Further, in its argument, Defendant fails to mention or discuss that it even attempted to engage in the interactive process pursuant to the ADA. It is clear that agents of Defendant knew Ms. Yampierre needed accommodations, yet there are no assertions that any of its agents that were on notice, did anything to even assess if Ms. Yampierre could in fact be accommodated or if her requests were reasonable. On the other hand, Plaintiff has averred that her supervisor threatened her about her need and use of the reasonable accommodation process.  Clearly, Defendant was aware that Plaintiff's needed reasonable accommodations and that she was enduring severe complications due to her pregnancy.  As such, Defendant's failure to remedy the accommodation and engage in an interactive process to find appropriate reasonable accommodations despite Plaintiff's attempts to bring attention to her needs, is a violation of the ADA, and these facts demonstrate that a dismissal of this claim would also be inappropriate and unjustified.

**6.  Plaintiff's Section 1981 Claim Is Not Improperly Pled.**

Contrary to Defendant's argument, Sgt. Yampierre has also averred sufficient factual allegations in her Complaint to state a plausible claim for race discrimination under Section 1981 of the Civil Rights Act, which this Court well knows does not require administrative exhaustion. *See e.g.*, *Hodge v. Walrus Oyster Ale House*, Civil Action No. TDC-18-3845, 2019 U.S. Dist. LEXIS 198763, at *16 (D. Md. Nov. 15, 2019). That also means, the allegations that Defendant is arguing are not related to Ms. Yampierre's EEOC Charge, would still fall within the bounds of her Section 1981 of the Civil Rights Act Count, and the time-period of coverage for that spans the last four years.

As explained above, the same burden-shifting framework under Title VII has traditionally been used to evaluate claims of race discrimination in employment under Section 1981, where the plaintiff does not provide any direct evidence of discrimination. *Love-Lane v. Martin*, 355 F.3d

766, 786 (4th Cir. 2004). Like the analysis in the preceding section, Plaintiff has sufficiently alleged facts to show that 1.) her job performance was satisfactory, 2.) an adverse employment action occurred, and 3.) that similarly situated employees who were outside of her protected class were treated more fairly. Considering the elements of a Section 1981 claim parallel those of a race discrimination claim pursuant to Title VII—minus the exhaustion requirement—and in light of the sufficient factual allegations noted in the preceding sections, Plaintiff has also stated a plausible claim for relief under Section 1981.

**7.  Plaintiff's Allegation in Count VI Should Not Be Dismissed Because She Has Averred Sufficient Factual Allegations Upon Which Relief Can Be Granted For Defendant's Violation of HIPPA.**

Defendant claims that it does not fall within HIPPA's definition of a covered entity or business because "law enforcement agencies. . . are not covered entities under HIPPA." Def. Memo. at 22. (citing *United States v. Elliott*, 676 F. Supp. 2d 431, 440 (D. Md. 2009)).  What Defendant fails to distinguish to this Court is that law enforcement is not subject to HIPPA when it is in the Government's interest to obtain medical information to prosecute a crime or aid an investigation, in other words, for a law enforcement purpose. *See United States v. Elliott*, 676 F. Supp. 2d 431, 437 (D. Md. 2009).  The case Defendant relies on is a case in which an individual sued the United States Park Police for obtaining medical records that included her blood alcohol content *after* she was transported to the hospital after being involved in a automobile accident. *Id.* at 434.  The medical records were then subsequently used to charge the defendant with driving under the influence and the defendant sued for a violation of HIPPA. *Id.*  Given the above facts, *Elliott* is clearly distinguishable from Plaintiff's case.  Sgt. Yampierre is not a random citizen whose right to privacy was violated by Defendant, nor was the private medical information Defendant sought from Plaintiff being used for a "law enforcement purpose."  Defendant's demand

that Plaintiff provide documentation of her medical history and exposure to COVID-19 was a violation of her privacy rights and an attempt to intimidate and demean the Plaintiff into submitting information that she had no obligation to provide to anyone outside of Human Resources, as a means to further harass her.  Pla. Compl. at 42, ¶ 217. Defendant's argument that it is not subject to federal law in this context simply because it is a law enforcement agency, is confusing, at best.

**8.  Plaintiff's MFEPA Claim Should Not Be Dismissed Because Sovereign Immunity Does Not Apply to the Defendant In This Case.**

Defendant seems to have a misplaced understanding about employment discrimination claims that are raised by an employee. Pursuant to State Government Article, §20-602, Annotated Code of Maryland, every Marylander is guaranteed equal opportunity in receiving employment and in all labor management-union relations regardless of **race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, disability,** or **genetic information**. Under FEPA, all public sector employees and all employees of an employer who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. There is nothing in the Maryland Code related to claims of employment discrimination filed by a police officer, who is a public employee, against her employer, the Baltimore Police Department, which is a public employer. This is not a case of a civilian bringing a claim against a law enforcement entity—this is a case about an aggrieved employee bringing an employment discrimination, sexual harassment, and retaliation complaint against her employer for its actions against her in the scope of her employment. Just like a police officer can bring a federal discrimination claim against her employer claim under Title VII of the Civil Rights Act, a parallel state claim can be brought on the same basis. Therefore, dismissal of Plaintiff's complaint is equally unavailing on this Count, as well.

## **CONCLUSION**

In conclusion, Plaintiff was subjected to race, sex, disability, and pregnancy discrimination, as well as retaliation by Defendant's agents, and when leadership under the Defendant's employ were made aware of this harassment, they failed to remedy the situation and allowed a hostile work environment to flourish.   Considering all of the Plaintiff's Counts have been properly and specifically alleged in her Complaint and past legal muster for this stage of litigation, no aspects of Plaintiff's complaint should be dismissed in whole or in part, and this case should proceed to discovery.  Accordingly, the Defendant's Motion to Dismiss should be denied.

Dated: October 18, 2021

Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Danika Yampierre*