THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

DANIKA YAMPIERRE                              *

     Plaintiff,                                    *

v.                                            *          Case No.: 1:21-cv-01209-ELH

BALTIMORE POLICE DEPARTMENT *

     Defendant.                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

### DEFENDANT BALTIMORE POLICE DEPARTMENT'S
### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Plaintiff's Opposition fails to rebut the arguments raised in Defendant Baltimore Police Department's ("BPD") Motion to Dismiss.  Plaintiff also fails to meaningfully respond to several arguments in Defendant's Motion and Memorandum, thereby abandoning those claims.  Since Plaintiff's allegations continue to fall short of the pleading standard required to state a claim for relief, her Complaint must be dismissed with prejudice and without leave to amend.

### ARGUMENT

In her Opposition, Plaintiff purports to speak for all African-American female employees at BPD, who, as she claims, suffer under "a police department that is full of pervasive and consistent discriminatory and retaliatory treatment of … Black wom[e]n in leadership." ECF 8-1, at 3.  Her defamatory proclamations notwithstanding, Plaintiff ignores several important points that prove fatal to her claims.  First, the second highest ranking member of BPD is Sheree Briscoe, an African-American female who serves as the Deputy Commissioner of Operations.  *See* BPD Organizational Chart, https://www.baltimorepolice.org/about/about-department (last accessed October 25, 2021).  Contrary to Plaintiff's opinion, African-American females clearly do hold high

1

ranking positions throughout the Department, as the organizational chart shows. *Id.* Secondly, Plaintiff ignores a recent similar case brought by another African-American female officer who also worked within Plaintiff's Building Security Division unit, and who similarly claimed that the entire Department had animosity towards African-American females. *See Carson-Johnson v. Baltimore City Police Dep't*, No. CV BPG-18-3064, 2021 WL 3930098 (D. Md. Sept. 2, 2021).

Of course, while BPD acknowledges that the facts of every lawsuit are different and that the successful defense of the *Carson-Johnson* matter does not *per se* guarantee a similar result in this case, it suffices to say that Plaintiff's proclamation that BPD is a "law enforcement agency that seemingly fails to, and rejects the idea of, protecting one of its own" (ECF No. 8-1, at 3) is nothing more than empty bravado. In the end, Plaintiff's allegations remain insufficient to state a claim for relief, and the Complaint must be dismissed with prejudice and without leave to amend.

## I.    Plaintiff's failure to exhaust her administrative remedies is fatal to her suit.

Rather than cite caselaw in support of her position, Plaintiff instead asks the Court to completely ignore the well-settled principles behind Title VII's exhaustion requirements in favor of her own jurisprudence. In Plaintiff's view, anything that she subjectively believes to be a grievance is *per se* actionable, even if raised for the first time in her Complaint. This flies in the face of Title VII.

Plaintiff argues, without merit, that *Evans* actually supports this Court allowing her claim to proceed because they are "reasonably related." *See* ECF No. 8-1 at 3 (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). In reality, in *Evans*, the Fourth Circuit specifically found the plaintiff's claims – which are of strikingly similar nature to those asserted in this case – to be "too discrete" and "removed" to be reasonably related and within the scope of the plaintiff's original claim in her administrative charge. *Evans*, 80 F.3d at 963. Of particular

importance, the *Evans* plaintiff originally only filed an administrative charge for "failure to promote based on gender discrimination." *Id.* In her federal complaint, however, she sought to bootstrap claims of sexual harassment and discrimination in pay and benefits, which the court rejected. *Id.* As such, it follows that if the Fourth Circuit can find these claims (*i.e.*, failure to promote based on gender discrimination and discrimination based on pay and benefits) as discrete enough to fall outside the scope of claims not originally included in an administrative charge, then surely Plaintiff's claims in the instant matter similarly exceed the scope of those originally submitted with the EEOC.

Reading Plaintiff's Charge of Discrimination, it is clear that she failed to adequately include certain allegations that are now included in her lawsuit. For example, in her Charge, Plaintiff claims that she suffered only discrimination based on race, sex, and retaliation. ECF No. 7-2, at 1. Notably, Plaintiff makes no mention at all of disability discrimination. *Id.* Nor does Plaintiff claim she was subject to a hostile work environment. *Id.* Indeed, the "sex" discrimination complained of has nothing to do with her sexual harassment claim; she, in fact, provided no allegations of any sexual harassment, severe or pervasive conduct, or anything else that might trigger a hostile work environment claim. *Id.* Nor does Plaintiff actually claim that she was subject to discrimination based on her gender. *Id.* Although she checked the box for "sex" discrimination, her Charge is utterly devoid of any allegation related to her gender. *Id.* The only claim that one could tenably argue is close to addressing gender discrimination is Plaintiff's statement that she believes she was subjected to discrimination because she was pregnant. *Id.*

In contrast, Plaintiff's Complaint includes Counts of gender discrimination (Count II), sexual harassment/hostile work environment (Count III), disability discrimination under the ADA (Count VII), and violations of the Maryland Fair Employment Practices Act (Count VIII). ECF

No. 1.  None of these causes of action were ever listed in her Charge, nor could they be inferred from a plain reading of the Charge's language itself.  As explained in *Wade B. Satterfield v. City of Chesapeake*, No. 4:20-CV-00005, 2021 WL 4812452, at *5 (E.D. Va. Oct. 14, 2021), "in evaluating the scope of the plaintiff's allegations, courts consider the entire EEOC charge form." Although whether a box is checked on the form "is not dispositive" and is but "one factor in [the court's] analysis," *see Mercer v. PHH Corp.*, 641 F. App'x 233, 238–39 (4th Cir. 2016), it is telling that, in this case, Plaintiff checked certain boxes but not others.

The narrative of Plaintiff's Charge clearly demonstrates that her Complaint exceeds the scope of the claim in her EEOC claim.  As the *Satterfield* Court explained, "courts will give *greater* weight to the narrative portion of the EEOC form."  *Satterfield*, 2021 WL 4812452, at *5.  Reading Plaintiff's Charge of Discrimination alongside her Complaint, it is clear that she is attempting to shoehorn new claims into this suit through the allegations of her Complaint.  In her Opposition, Plaintiff even concedes as much.  In fact, she argues that "actions of Officer Ajikobi, Major Stephanie Lansey, Director Reynolds, Lieutenant Brian Pearson, and others are instances of retaliation and harassment that Plaintiff faced, which were included in the preceding EEOC charge." ECF No. 8-1, at 4.  This statement is as easily rebutted, as it is untrue.  The names of Ofc. Ajikobi, Maj. Stephanie Lansey, and Director Reynolds appear nowhere in her Charge.  ECF No. 7-2.  Instead, Plaintiff names only Lt. Deanna Effland and Lt. Brian Pearson as the purported bad actors in her Charge.  *Id.*  By comparison, Plaintiff's Complaint adds new individuals, new events, and a new timeline for consideration. ECF No. 1.  Moreover, her Opposition reinforces the positions taken in the Complaint, and again places the lion's share of the blame on Ofc. Ajikobi *See* ECF No. 8-1 at 4 ("Defendant's attempt to characterize the officers' actions as separate incidents with no common thread falls flat because *but for* Plaintiff's reported issues with Ofc.

4

Ajikobi and Lt. Effland…."). If Ofc. Ajikobi truly were the bane of Plaintiff's existence and the main perpetrator of discriminatory conduct against her – as she has repeatedly claimed in the Complaint and Opposition – then Ofc. Ajikobi would naturally have been listed in her Charge of Discrimination. That neither his name, nor any of his alleged bad acts that Plaintiff describes in the Complaint as occurring *before* her EEOC Charge was filed, appear in the Charge is striking. ECF. No. 7-2.

Plaintiff simply cannot have it both ways. If Ofc. Ajikobi is a relevant individual who harassed Plaintiff and otherwise discriminated against her, then Plaintiff's failure to include his name and the alleged conduct – or ever mention him at all – clearly demonstrates that she failed to exhaust her administrative remedies. On the other hand, if Ofc. Ajikobi is not relevant, then his inclusion in the Complaint is irrelevant and all the conduct attributed to him should be completely dismissed. Either way, BPD respectfully submits that this Court should decline Plaintiff's invitation to circumvent the rules of administrative exhaustion, and find that Plaintiff's claim improper.

## II.     **Plaintiff misunderstands Title VII's requirements for timely filing a suit.**

Plaintiff doubles down on the continuing violation theory, asserting that

> all of Plaintiff's allegations are related to her filed EEOC charge precisely because the acts Plaintiff alleges are a part of a pattern of harassment and retaliation that resulted in a hostile work environment as a result of the discrimination that she alleged in her EEOC charge. As such, Plaintiff's claims are not time-barred and are in fact subject to the continuing violation doctrine.

ECF No. 8-1, at 6. For the "continuing violation" theory to apply, Plaintiff must show that the "'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Angelini v.*

*Baltimore Police Dep't*, 464 F. Supp. 3d 756, 788 (D. Md. 2020), quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002).

As noted above, Plaintiff's Charge of Discrimination and Complaint contain vastly different individuals and allegations. Plaintiff's Charge presents several discrete acts of discrimination:

- August 28 – September 3, 2019: Plaintiff was harassed by Lt. Effland when she demanded to disclose what Plaintiff told Internal Affairs about her possible overtime violations.

- September 3, 2019: Lt. Pearson harassed Plaintiff by asking her when she would be going on "light duty" due to her pregnancy.

- November 22 – 25, 2019: Lt. Pearson made false allegations against Plaintiff, which lead to administrative investigations against her.

- November 22, 2019: Plaintiff was excluded from weekly debriefing meetings and emails, and had many of her administrative duties taken away.

- December 27, 2019: Plaintiff complained to Internal Affairs about Lt. Pearson and Lt. Effland, but nothing was done.

- February 24 and February 26, 2020: Plaintiff was charged with arriving late and leaving early to work, and for improperly her vehicle.

ECF No. 7-2.

Furthermore, Plaintiff's reliance on *National Railroad Passenger Corp. v. Morgan* is misplaced. *See* ECF No. 8-1 at 6 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). In fact, the Supreme Court actually reversed the appellate court's decision to apply the continuing violations doctrine to claims of retaliation or discrimination that were ostensibly related and occurred within a relatively close time period. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. In reality, the Court held "a discrete retaliatory or discriminatory act "occur[s]" on the day that it "happen[s]." *Id* at110.

The Court further held that:

> [e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice. [The plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period. While [the plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable.

*Id.* at 114. Moreover, while the Court also found that hostile environment claims were of a "different in kind from discrete acts" such that they "cannot be said to occur on any particular day," Plaintiff asserts no such claim in this case. Accordingly, Plaintiff's reliance on *National Railroad Passenger Corp.* undermines her own argument.

As the Charge plainly shows, Plaintiff was *not* alleging a continuing violation but was instead pointing to six discreet acts. Moreover, these acts do not allege a hostile work environment. Rather, they highlight separate acts by only two individuals, Lt. Effland and Dir. Pearson, neither of whom are alleged in the Charge to have sexually harassed Plaintiff. In contrast, Plaintiff's Complaint presents entirely different individuals, primarily Ofc. Ajikobi and Stephanie Lansey, as the source of the allegedly hostile work environment. ECF No. 1; *see also* ECF No. 8-1 at 9 (describing Ofc. Akijobi as a "main aggressor"). Plaintiff's Opposition fails to clarify this discrepancy, and instead asks the Court to infer more from the Charge than what is actually there. Plaintiff's own belief that she was subjected to a hostile work environment, standing alone, is insufficient to advance her claim. *See U.S. Equal Emp. Opportunity Comm'n v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 574 (D. Md. 2018) ("the continuing violation doctrine does not permit a plaintiff to rehabilitate claims of discrete acts of discrimination simply by alleging that they were part of a "hostile work environment.'").

### III.      Plaintiff's race, gender, and pregnancy claims fail.

Other than a passing mention of the *Twombly/Iqbal* pleadings requirements, Plaintiff cites no authority to support her argument that her scatter-shot Complaint adequately presents claims of race, gender, and pregnancy discrimination.   Instead, she merely states without support that "Defendant's leadership and fellow civic duty-bound officers orchestrated numerous acts to progressively break Plaintiff down, and to subject her to humiliating and debasing discrimination as a result of her race, sex, and gender."  ECF No. 8-1, at 9.

Plaintiff's tactics here are dubious.  Rather than address the obvious flaws in her Complaint – among other things, that she was under criminal investigation by the Baltimore City State's Attorney's Office ("SAO") for her conduct (ECF No. 1, at ¶ 95) – she instead attempts to smear the BPD.  Indeed, Plaintiff's Opposition makes absolutely no mention of the criminal investigation against her, nor does she address how this could have negatively impacted her work environment or work performance.  *See* ECF No. 8-1.  Instead, Plaintiff believes that any workplace incident must, *per se*, be discriminatory.  ECF No. 1.  But she cannot substitute her own opinion for appropriately pleaded facts.  *See Royall v. C&C Meat Sales, Inc.*, No. 20-1005-PWG, 2021 WL 1060441, at *5 (D. Md. Mar. 19, 2021) ("Plaintiff's claims do not support reasonable inferences of race-based discrimination, but rather require 'speculation' to 'fill in the gaps' as to whether Mr. Dicks' actions were racially motivated.").  Plaintiff fails to show how she was treated differently due to her protected class, or that others outside of her protected class were treated more fairly.  She only presents, through her Complaint and Opposition, a picture of workplace interactions to which she ascribes discriminatory motives based on rank speculation.  Plaintiff then asks the Court to conclude that, because she is an African-American pregnant female, she must have been discriminated against based on her race, pregnancy status, or gender.  *Guillen v. Esper*, No.

119CV1206LMBIDD, 2020 WL 3965007, at *10–11 (E.D. Va. July 13, 2020) ("plaintiff effectively asks the Court to presume that because she was the only Asian employee of Cambodian descent in her office, any criticism or discipline she received must necessarily have been based on her race or national origin. This assumption is insufficient to survive a motion to dismiss. '[N]aked assertions devoid of further factual enhancement are not entitled to the presumption of truth.'") (internal citations omitted).

Because Plaintiff has not shown that anything she experienced was motivated by discrimination, her claims here must fail. She has only supplied this Court with guesswork and conjecture that the alleged conduct was motived by discriminatory animus. This "does not amount to pleading actual facts to support a claim" but instead "constitutes mere 'speculation,' which impermissibly requires a court to 'fill in the gaps' as to a defendant's motivation." *Id.*, at *10 (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021)). As the *Guillen* Court explained, "courts in the Fourth Circuit have routinely dismissed Title VII claims in which the plaintiffs alleged race discrimination without providing sufficient factual allegations to support such a claim, apart from a general, unsupported assertion that employees of a different race were treated more favorably." *Guillen*, 2020 WL 3965007, at *11.

In this case, Plaintiff has not pleaded sufficient facts to support her race, gender, and pregnancy claims, and thus those Counts should be dismissed with prejudice.

## IV.   Plaintiff's hostile work environment claim is insufficiently plead.

Rather than provide support for her hostile work environment claim, Plaintiff uses her Opposition to blanketly state that "at every turn, it became clear that no matter how much Plaintiff cried for help, she was met with inaction and indifference by Defendant, which enabled a hostile work environment to flourish—and it is continuing to this day." ECF No. 8-1, at 10.

Sensationalism alone is not sufficient to prove this claim; more is required.  Plaintiff must show actual, real, tangible facts that tie her protected class to the hostile work environment.  In other words, although she paints a "laundry-list" of workplace grievances, Plaintiff fails to provide any "allegations from which one could reasonably infer that any of plaintiff's grievances have any connection whatsoever" to her protected class or participation in protected activity.  *Guillen*, 2020 WL 3965007, at *14.  The Complaint falls well short of the pleading requirements in this regard, and her Opposition fails to nudge her claim across the line of conceivable to plausible.

Plaintiff must do more than just point to unpleasant workplace interactions she "believes" were discriminatory or constituted a hostile work environment.  *See Cole v. Hillside Fam. of Agencies, Inc.*, No. CIV. PJM 10-3326, 2011 WL 2413928, at *7 (D. Md. June 9, 2011) In dismissing that Plaintiff's hostile work environment claim, Judge Messitte explained,

> although Cole alleges that Hillside subjected him to certain unwelcome actions—
> *e.g.*, forcing him to work without pay, forcing him to redo assignments of "top
> quality," unjustifiably denying him professional development opportunities,
> unjustifiably stripping him of job duties, and isolating him from his co-workers,
> among other things—he alleges no facts that might even suggest that these alleged
> actions were somehow based on his gender, race, or disability. Indeed, beyond the
> sort of conclusory statements that the Court found insufficient to support his claim
> of gender discrimination—*e.g.*, that similarly situated employees were treated
> differently, or that Cole "believes" Hillside's actions were based on his protected
> status—Cole does not allege any connection whatsoever between his status and
> Hillside's alleged harassment.

*Id*.  The vast majority of incidents between Plaintiff and Lt. Effland, for example, appear to be the kind of "personality conflicts" that pervade "many a workplace" and are not, standing alone, actionable.  *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008).  As for her claims against junior Ofc. Ajikobi, Plaintiff has done nothing more than show she had difficulty managing a subordinate employee under her command.

## V.      Plaintiff's ADA claim is fatally flawed.

Plaintiff's ADA claim fares no better than her other claims.  She again misconstrues the law, and seeks to hold BPD liable for her failure to correctly engage in the interactive process of obtaining a reasonable accommodation.  Plaintiff argues that because "agents of Defendant knew Ms. Yampierre needed accommodation," BPD must be liable.  ECF No. 8-1, at 13.  Unfortunately for Plaintiff, this position is not supported by law.  Defendant's alleged knowledge of Plaintiff's pregnancy is not enough to trigger the ADA.  Instead, "the duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013).  That did not happen here.  In her Complaint, Plaintiff states only that "on or around August 27, 2019, Plaintiff notified her command of her pregnancy, specifically mentioning that her pregnancy was high-risk so that they could understand the necessity of her being able attend doctor's appointments at different times of the day." ECF No. 8-1, at ¶ 39.  As an initial matter, Plaintiff does not claim that she affirmatively requested any accommodation, other than the ability to attend her medical appointments.  *Id.*  She does not claim to have engaged in the interactive process at this point, but states only that she "notified" her chain of command that she was pregnant.

Although this notification does not constitute a request for a reasonable accommodation, by her own admission her supervisor accepted her request without hesitation.  As Plaintiff explained, "on or about September 25, 2019, Plaintiff submitted a second written notification regarding her pregnancy and the importance of her attending her scheduled doctors' appointments. *Lt. Pearson acknowledged this notification and replied that he supports her, cares about her health, and will ensure that the Unit is covered before she departs for each appointment, or words*

*similar*."  ECF No. 1, at ¶ 47 (emphasis added).  At no point does Plaintiff claim that BPD

prevented her from attending medical appointments during her pregnancy, nor does she maintain

that BPD refused to accommodate her request.  Perhaps realizing that she undercut her own claim,

Plaintiff resorts to lodging wild accusations that further undermine her case.   According  to

Plaintiff:

> On or around December 2, 2019, the Plaintiff received an email from the Human
> Resources Department stating that they had been informed by Director Reynolds
> that the Plaintiff is pregnant. Director Reynolds had no right to divulge this
> information to Human Resources or at all. Human Resources informed Plaintiff
> about the documentation that she needed to submit as quickly as possible as a result
> of her pregnancy and projected maternity leave.  Based on reason and belief,
> Director Reynolds told Human Resources about the Plaintiff's pregnancy in an
> effort to have her involuntarily transferred from the Unit since the Departmental
> policy had changed regarding whether officers working light duty could remain in
> that specific Unit.

ECF No. 1 at ¶ 63.

Plaintiff's Complaint entirely misses the mark in this regard, and in fact she effectively

terminates her ADA claims with this one paragraph.  At bottom, Plaintiff believes that the act of

her supervisor informing BPD's Human Resources Department about her pregnancy – the very

"disability" that Plaintiff claims was the reason she needed the ability to attend her medical

appointments – was somehow nefarious and improper.  True to form, Plaintiff postulates that

BPD's requests for supporting documentation of her pregnancy had some malicious underlying

motive, when in reality, it was so that BPD could assess her request in an attempt to find the

appropriate accommodation.

Plaintiff presents a conflicting position here.  On the one hand she complains that BPD

violated the ADA by failing to accommodate her, while on the other hand, the allegations in her

Complaint confirm that she refused to meaningfully engage in the interactive process.  Indeed, by

Plaintiff's own admission, she concedes 1) that her commander voiced his support of her, ensured

her that her Unit would be covered in her absence, and freely allowed her to attend her medical appointments, and 2) that BPD's HR department proactively reached out to Plaintiff to notify her of the "documentation that she needed to submit as quickly as possible as a result of her pregnancy and projected maternity leave."   ECF No. 1, at ¶ 63.   Even BPD's Fiscal Unit "reconciled" Plaintiff's leave balance before she went on maternity leave to ensure she received the correct amount of leave. *Id.*, at ¶ 71.   These acts demonstrate that the BPD did, in fact, attempt to provide Plaintiff with an accommodation, even though she never actually meaningfully engaged in the interactive process. *See Nelson-Rogers v. Kaiser Permanente*, No. GJH-17-3326, 2020 WL 917067, at *9 (D. Md. Feb. 25, 2020) (Defendant's "failure to provide Plaintiff with her preferred accommodation—stricter enforcement of the smoke- and fragrance-free policies at the CSC—could not make it liable for failure-to-accommodate because Defendant was not required to provide Plaintiff 'with a perfect accommodation or an accommodation most preferable to [her], only one that [was] reasonable and effective to address [her] disability.'") (internal citations omitted).

Plaintiff's continued pursuit of her ADA claim is confounding, as her own Complaint demonstrates the absence of a cognizable claim.   Plaintiff ostensibly believes that, because she told her commanders she was pregnant, she was thus forever after entitled to the protections of and recourse provided by the ADA.   But this is not how the ADA – or any other law in the employment discrimination context, for that matter – operates. *See Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 700 (D. Md. 2005) (rejecting Plaintiff's request for "permanent help from a colleague" as an unreasonable accommodation in requiring "permanent help with an essential duty").   As with the rest of her Complaint, Plaintiff's ADA claim is without merit and must be dismissed with prejudice.

## VI.   Plaintiff has no claim under Section 1981.

Plaintiff stubbornly refuses to acknowledge that her claim under Section 1981 is improper.
Although she cites the relevant elements of a Section 1981 claim, she fails to realize that such a
claim can not be brought against this particular Defendant.   As this Court has explained, the
holding in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) is controlling. *See Victors v.
Kronmiller*, 553 F. Supp. 2d 533, 543 (D. Md. 2008) ("*Jett* applies…because State Defendants are
clearly 'state actors' within the definition of that term…Even assuming that plaintiffs have sued
State Defendants in their individual, rather than their official, capacities, the individual defendants
are nonetheless state, not private, actors.   Thus, § 1983 provides the exclusive federal damages
remedy for the violation of the rights.").   Plaintiff's focus on whether she in fact stated a cause of
relief under Section 1981 is therefore misplaced.   Regardless of how detailed her claim under
Section 1981 may be, it fails for the simple reason that it cannot be asserted against BPD.  *See
Victors*, 553 F. Supp. 2d at 543–44 ("Furthermore, because only § 1983–not § 1981 or § 1982–
provides explicit protection against actions 'under color of [law],' it makes sense that the instant
suit may only be brought under § 1983.").

Of course, even if Plaintiff had brought this claim under Section 1983, it would still be ripe
for dismissal, as she has not "plausibly alleged" that BPD had an "official custom or policy" of
discrimination.  *See Brown v. Bratton*, No. CV ELH-19-1450, 2020 WL 886142, at *16-17 (D.
Md. Feb. 21, 2020).   Under any reading of the Complaint, Plaintiff's cause of action under Section
1981 must be dismissed with prejudice.

## VII.   BPD is not a HIPPA covered entity.

Plaintiff cannot simply will a cause of action into existence.   Nor can she haphazardly eke
by with a misguided reading of *United States v. Elliott*, 676 F. Supp. 2d 431 (D. Md. 2009).

14

Plaintiff seemingly contends that a law enforcement agency is subject to HIPPA in employment situations, where the government is not acting to obtain medical information to prosecute a crime or aid an investigation. *See* ECF No. 8-1 at 14-15. However, that is not the court's holding in *Elliott*. Rather, the *Elliott* court specifically held that "HIPPA prohibits a 'covered entity' from receiving and using protected health information. 45 CFR § 164.502(a). Law enforcement agencies, including the office of the prosecuting attorney, are not covered entities under HIPPA." *Elliott*, 676 F. Supp. 2d at 439–40.

Even if BPD were a covered entity, which it is not, Plaintiff has not explained how she would have a private cause of action. The *Elliott* court made clear that "HIPPA provides for criminal and civil penalties against entities that fail to comply with its provisions. 42 USC §§ 1320d–5, 1320d–6." *Elliott*, 676 F. Supp. 2d at 440; *see also Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) ("HIPAA provides that '[a] person who knowingly ... discloses individually identifiable health information to another person' without authorization shall be fined, imprisoned, or both. 42 U.S.C. § 1320d-6(a)(3), (b)."). Here, Plaintiff cannot properly maintain a private cause of action under HIPPA because no such cause of action exists. *Payne*, 998 F.3d at 660 ("HIPAA does not expressly allow for a private cause of action but delegates enforcement authority to the Secretary of the Department of Health and Human Services, reflecting Congress's intent to forgo creating a private remedy.").

Plaintiff also draws arbitrary distinctions in asserting this claim. She contends that "Defendant's demand that Plaintiff provide documentation of her medical history and exposure to COVID-19 was a violation of her privacy rights and an attempt to intimidate and demean the Plaintiff into submitting information that she had no obligation to provide to anyone outside of Human Resources, as a means to further harass her." ECF No. 8-1, at 14-15. This contention is easily rebutted by guidance the EEOC has provided to employers on COVID-19 protocols. *See* U.S.

15

Equal Employment Opportunity Commission Coronavirus and COVID-19 Guidance, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last accessed on October 25, 2021).  Plaintiff capriciously contends that only an HR representative can require production of an employee's medical documentation, and that no one else within BPD could properly require critical exposure information in the midst of a global pandemic.  This is simply not true, as the EEOC Guidance makes clear.  *See id.*  Plaintiff's own opinion on the matter is of no moment.  As with the rest of her suit, this Count must be dismissed.

**VIII.   Plaintiff's MFEPA claims fail for multiple reasons.**

As an initial matter, Plaintiff's Opposition completely ignores BPD's argument that prevents her MFEPA claim from proceeding.  As noted in BPD's Motion to Dismiss, Plaintiff failed to comply with the notice requirements of the Local Government Tort Claims Act ("LGTCA").  *See Martino v. Bell*, 40 F. Supp. 2d 719, 723–24 (D. Md. 1999) (noting that "the LGTCA applied to 'all torts without distinction, including intentional and constitutional torts.'") (quoting *Thomas v. City of Annapolis,* 113 Md. App. 440 (1997).  Plaintiff makes no mention of the LGTCA, blowing right past by this dispositive issue.  She has neither complied with the notice provisions of the LGTCA, nor has she properly alleged compliance in her Complaint.  Contrary to Plaintiff's argument in her Opposition, the LGTCA applies. *See Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 643 (2015) ("nothing in the statute's language or its legislative history indicates that the General Assembly intended to exclude any category of tortious conduct committed by a local government or its employees, from the scope of the LGTCA notice requirement.").  As such, her failure to comply with the LGCTA proves fatal to her claim.

Additionally, Plaintiff's argument that BPD is not entitled to sovereign immunity is without merit.  Maryland courts have uniformly and unequivocally held that BPD is entitled to common law state sovereign immunity and thus shielded from liability on state and common law claims. *See Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *12 (D. Md. Nov. 8, 2019) ("State sovereign immunity bars an individual from maintaining a suit for money damages against the State of Maryland or one of its agencies for violations of State law."); *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2021 WL 3510579, at *7 (D. Md. Aug. 10, 2021); *Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *9 (D. Md. Apr. 20, 2021); *see also Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 313 (2001).  Aside from proffering her own opinion that her claim should be allowed to proceed, Plaintiff cannot supply this court with any authority to support why her MFEPA claim – which she concedes is indisputably a state claim, ECF No 8-1 at 15 – should be treated any differently. Accordingly, Plaintiff's MFEPA claim is barred by sovereign immunity and fails as a matter of law. Count VIII must be dismissed with prejudice.

## CONCLUSION

The arguments in Plaintiff's Opposition offer nothing to move the needle on her suit.  Her Complaint is rife with defects, and she continues to advance both time-barred and improper claims. Plaintiff ignores her own conduct, which led to a criminal investigation into her behavior, and claims instead that every negative workplace interaction must have been discriminatory. Nevertheless, her Complaint fails to satisfy basic pleadings requirements, and therefore must be dismissed, with prejudice, and without leave to amend.

WHEREFORE, Defendant respectfully request that this Honorable Court dismiss Plaintiff's entire Complaint, with prejudice and without leave to amend.

Respectfully submitted,


_____/s/_____
Justin S. Conroy
Deputy Chief Legal Counsel
Federal Bar No. 28480
(410) 396-2496 / (410) 396-2126 fax
Baltimore City Department of Law
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
*Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of November, 2021 that a true copy of the foregoing Reply was filed in accordance with the electronic filing requirements and procedures as established by the U.S. District Court for the District of Maryland.


_____/s/_____
Justin S. Conroy (28480)